## Hall, et al. v. Bartram's Admr., et al.

(Decided December 5, 1912.)

### Appeal from Lawrence Circuit Court.

Trusts—Land—Purchaser at Decretal Sale—Evidence—Weight and Sufficiency.—Evidence examined and held sufficient to support judgment that the purchaser of real estate at decretal sale bought it for his own benefit.

H. C. SULLIVAN and STEWART & VINSON for appellants.

M. S. BURNS for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Samuel Frazier, a resident of Lawrence County, Kentucky, died some time prior to September, 1896, the owner of a small landed estate in said county. He left surviving him a widow and nine children. After his death, one Peter Cline, who had years before procured a judgment against Samuel Frazier, instituted a suit in equity against his widow and heirs at law, in which he sought to have the land sold in satisfaction of his debt. Such proceedings were had that, at the September, 1896, term of the Lawrence Circuit Court, a judgment was rendered adjudging to plaintiff a lien upon the land and directing that it be sold in satisfaction of plaintiff's debt, subject to the right of the widow to a homestead therein. Commissioners were appointed to set apart to the widow a homestead. This was done, and the balance of the land was sold. The lands, remaining after the homestead was set apart, failed to bring a sum sufficient to satisfy plaintiff's debt, interest and costs, and thereafter the court directed a sale of the homestead tract, subject to the widow's right of occupancy during her life; and, in pursuance of this order of court, the homestead tract was sold. These lands were purchased by one Lark Maynard, who afterwards assigned a two-thirds interest in his bid and purchase of each tract to John Bartram, and the remaining one-third interest to Elijah Maynard. John Bartram, by assignment, later became the owner of this one-third interest. The widow remained in possession of the homestead tract until her death, about the year 1908. There was living with her, at the time of her death, her son-in-law, Odd Hall, and his children. When the purchasers, W. H. and John Bartram, demanded possession of the homestead tract, Hall and his children declined to vacate, and they, together with certain others of the children of Samuel Frazier, set up claim to the land, alleging that the purchase of same by W. H. and John Bartram was made pursuant to an arrangement entered into by W. H. Bartram with the heirs-at-law of Samuel Frazier, deceased, whereby the said W. H. Bartram was to purchase the land, sold at commissioner's sale, and hold it for their benefit. They thereafter tendered to W. H. and John Bartram the money which they paid for said lands, with interest. This, the said W. H. and John Bartram declined to accept. Thereupon, Odd Hall,

as next friend for his children, instituted a suit against W. H. and John Bartram and certain of the heirs at law of Samuel Frazier, whom he made defendants, and sought to have the purchase made by the Bartrams declared to be for the benefit of his children and the other heirs at law of Samuel Frazier, deceased. John Bartram, in his answer, alleged that he purchased the land for the benefit and protection of W. H. Bartram, and that he had no personal interest in the transaction. W. H. Bartram alleged in his pleading that, after the death of Samuel Frazier, he purchased the interest of six of the heirs of Samuel Frazier in their father's estate, and took from them title bonds or contracts of sale for their said interest; that, after he had made these purchases, Peter Cline undertook to subject the landed estate of Samuel Frazier to the satisfaction of a judgment, which he had procured against the said Frazier many years before; that, when the court directed the land sold in satisfaction of this judgment, he was compelled to, and did, become a bidder upon the lands to the extent of his interest therein; and that, when Lark Maynard conveyed to him a two-thirds interest in his bid and purchase, this represented his six-ninths interest in the estate which he had bought from the heirs; and that the said Lark Maynard, in pursuance of an agreement and understanding had with the heirs prior to the sale, at the same time conveyed the remaining one-third of his purchase, representing the interest of tht three remaining heirs, which he had not bought, to Elijah Maynard. He denied that he had made any arrangement or agreement with the heirs, or any of them, whereby the purchase which he made was to inure to their benefit, or that the land was to be held by him for their benefit, with the understanding that he was to be repaid the purchase price, with interest. Upon this issue, proof was taken and the case submitted for judgment. Upon consideration, the chancellor was of opinion that the plaintiffs had failed to show the existence of any trust arrangement between themselves and W. H. Bartram, and he thereupon entered a judgment dismissing their petition. The plaintiffs appeal, and seek a reversal of the finding of the chancellor.

The entire record of the suit of Cline against the heirs and creditors of Samuel Frazier, deceased, is copied into and made a part of this record. From an examination of that record, it appears that, in the ex-

ceptions filed to the report of sale by W. H. Bartram, he alleged that he was the owner, by purchase, of six interests in the estate of Samuel Frazier, and in said pleading, he set out the names of the heirs whose interests he had purchased. All of these heirs were, at the time, parties to the suit. So that it cannot be said that the claim now asserted by W. H. Bartram is the result of an afterthought. By this pleading it is clearly shown that before the reports of sale were confirmed or deeds made, he was asserting title to six-ninths of this land, under and by virtue of his purchase from the heirs themselves. The record further shows that, although he had possession of and held all of the land except the homestead interest from the time of his purchase until after the death of the widow, no claim of ownership was ever asserted by any of the heirs at law of Samuel Frazier; nor was there any evidence whatever to the effect that, at any time from 1897, when this land was openly and publicly sold to W. H. Bartram, through his agent, did any of the heirs at law of Samuel Frazier offer to repay to him the purchase price, with interest, or any part thereof, or do or say anything in the least indicative of a claim or recognition of a right on the part of any of the heirs of Samuel Frazier, deceased, to any interest in this property. He recognized, from the date of his purchase, only the right of the widow to a homestead interest in so much of the farm as the commissioners, appointed by the court for that purpose, set apart to her. He and his brother testify emphatically that there was no arrangement or agreement between him and the heirs, or any of them, whereby he was to become a bidder at the decretal sale of the land, for their benefit. There are some facts and circumstances, brought out in the evidence, which tend to support the contention of appellants. The chief of these is a writing, signed by Lark Maynard either just before or immediately after he bid in this land. Said writing is as follows:

"It is hereby understood that in the sale of the Frazier lands each heir shall pay Lark Maynard his part of ($376.00) three hundred and seventy-six dollars as it comes due, this amount being against Samuel Frazier's estate, there being nine shares estate. Feb. 15, 1897.

"(Signed) Lark Maynard."

Now, it is insisted that, inasmuch as this writing was prepared under the supervision of W. H. Bartram, it was a recognition on his part that the land, when bid in by Maynard acting as his agent, was to be held by him for the benefit of the nine children. Said writing is susceptible of said construction, but, on the other hand, it is likewise susceptible of a construction entirely harmonious with the theory of appellees. At that time there were nine heirs; six had sold their interest to their uncle, W. H. Bartram; the other three had not disposed of their interest; Bartram was not proposing to buy, except to protect himself. Maynard was to bid in the property and execute bond for the purchase price; and the purpose of this agreement was to show that, in bidding, Maynard was not acting for himself but for some one else. Bartram stood in the place of and represented six of the heirs, and, of course, stood answerable or responsible to Maynard for six-ninths of the purchase price, and the other three heirs were responsible, each for his one-ninth. Evidently, this latter arrangement was carried out, for Maynard thereafter transferred one-third of his bid and purchase to Elijah Maynard, who had married one of the Frazier girls, and had paid to Lark Maynard the one-ninth interest representing his wife's portion, and the interest of the other two children, who had not sold to W. H. Bartram. Now, if, as contended by appellants, W. H. Bartram had entered into an arrangement with his nephew and nieces whereby he was to purchase and hold this land, as trustee for them, we are at a loss to understand why he took title to only two-thirds, and left three of the heirs to arrange for themselves. Such conduct is inconsistent with the theory advanced by appellants.

When all of the facts and circumstances are considered in connection with the conduct of the parties during the more than ten years following the sale of this land, we are of opinion that the chancellor was justified in holding that the purchase made by appellees was for their own benefit, and that no trust arrangement or agreement existed between them and any of the heirs at law of Samuel Frazier, deceased.

Judgment affirmed.